We will move on to argument in. Let's make sure we've got a couple submitted here. So we're moving on. We've got McCarthy v. AMZN case number 23-35584. I know it's here. Mr. Talmadge. Thank you. Good morning. May it please the Court, Phil Talmadge here representing the families that were involved in these terrible suicides. As the Court knows, this is a horrible case involving Amazon's facilitation of the suicide deaths of vulnerable young people by supplying them with sodium nitrite, an industrial strength and variably lethal poison with no household uses. And now, of course, we have the decision of the Washington Court of Appeals in Scott, which fundamentally undercuts three fundamental components of the district court's decision in this case that dismissed the family's complaints under Rule 12b-6 grounds. What we're asking the Court to do today is essentially... Your position is the Court, assuming we took the Court of Appeals at face value and said this is how Washington's going to be, you think it advocates for reversal of the district court. Exactly. It seems like a pretty strained interpretation of the law. I mean, as I read the case, no, I mean, it's not final. You've said you're going to appeal it. Correct. Yes. But as I've read the current posture, it says pretty clearly that this is not a foreseeable risk and would not fit into the causal chain. Well, here's why we believe the fundamental decision of the district court was undercut by Scott. The district court relied on a notion under the Washington Product Liability Act, the Seller Liability Provision 040-772-040, that there had to be a defect in the product as a predicate to a lawsuit. They said not, but they then on other grounds... That's right. ...came to the same conclusion. Exactly, Your Honor, but they blew that up. The second piece of the decision said, this was the argument that the district court had made, that there was a preemptive effect to the Washington Product Liability Act regarding seller negligence claims, and that the principles of common law negligence in Washington didn't animate the term negligence in 772-0401A. Wrong again. There's no such preemptive effect. The restatement principles... Well, what would the negligence be if it's not negligence? Well, it's negligence within the various duties that the restatement talks about, and we discussed a variety of them. We discussed... What did the district court think what negligence was if it wasn't negligence? Well, the district court's vision on this was that they believed that if the negligence theory had a product effect, then it was somehow preempted. Right, so they're the same thing. I mean, there's really just one piece there. Well, but the difference is the court of appeals in Scott went through the various elements of the restatement that we had argued. They ignored Restatement 388, I might add. They addressed 315, the special relationship of a business to a business invitee. Which they said did not apply. They did it in a footnote. They addressed it in a footnote. And said the duty exists. They said the duty exists in Star 13 of their opinion. They then concluded, based on this Webstead case, a split decision that said you have no duty to prevent suicide. That somehow there was a lack of a duty to fail to facilitate suicide, notwithstanding a statute that said in Washington it's a crime. And the opinion in Scott is somewhat supportive if you're taking it to the Washington Supreme Court. It is indeed. It says, you know, we understand this is somewhat anomalous, but it's the law. And so it essentially invites you to go to the Washington Supreme Court. It does. They punted it. What's the time frame on that? Well, the petition for review would be due 30 days from the date of the Scott decision. There's probably not going to be...  Yeah, Merry Christmas. Council, you get to do a petition for review. Merry Christmas. But it's due. It's a hard 30 days. And then the court addresses the issue in a time frame of usually four to five months. As to whether to take it. As to whether to take it. But here's the significant thing, and this is something I'm not certain the panel is aware of. We have the decision of Commissioner Michael Johnston on the issue of review. We had sought to transfer the case to the Washington Supreme Court, the Scott case. And ultimately the court concluded, Commissioner Johnston concluded, that that was not the case. But he pointed out defect is wrong, negligence, you know, that seems to be the principle. He suggested that the case law, the Webster case, seemed to be pretty flawed as a basis for the decision to grant review. In the Washington Supreme Court, unlike the United States Supreme Court, the commissioner of the Supreme Court works up the issues for the court's review. So that commissioner acts as something of a gatekeeper to the court. So you have the individual who he and his staff... So you're basically making the case that this has a higher likelihood of being accepted. I would say absolutely so, Your Honor. In fact, the commissioner said this is a case in his ruling. This is a case that's likely going to be coming to us at some point. And what the court really wanted was for the Court of Appeals to hone the issues. Well, the Court of Appeals has now done that, although they punted on the fundamental question about whether all of this old case law on superseding cause relating to suicide was still viable. I mean, it was case law based on the first restatement of torts, not the second, not the third. Actually, it wasn't because the first restatement wasn't even there yet. But they relied on the first restatement in those old decisions. I checked that out, but anyway, go ahead. But the bottom line in this situation is those cases relating to superseding cause with suicide as a matter of law, superseding cause as a matter of law in the suicide context, have been undercut by modern Washington Supreme Court law on superseding. You argue that anyway, even if they were good law, they don't apply here. Absolutely not. This is not about fomenting the suicide, but facilitating it directly with the object. That's right. It's a situation where the defendant in this case provided the instrumentality of death. That didn't occur in Webstad, and Webstad was unique on its facts. A split case, highly politically charged case because the defendant was the Pierce County executive, and this young woman suicided in his house, and the circumstances, as you might expect, would be pretty colossal in terms of the political outcry involving that kind of situation. But in that case, the court basically said, looking at the statutory provisions, there's no duty to prevent suicide, but it's certainly different where there is a statute that says you can't facilitate or aid the committing of suicide, and that could be a predicate for negligence under Washington law, RCW 5.40050, making that evidence of negligence. So would your case, getting to the merits, would it be different if they had a warning on this product that said, you know, this could be used for suicide, be careful? Is that what you're claiming? Well, that's part of it. But you'll hear Amazon step up, and they'll cry a bunch of crocodile tears about how tragic this case is and how they really regretted all of this. I think everybody can agree the case is tragic. Oh, I think that's true. But they had in their possession knowledge that kids were committing suicide with sodium nitrate in 2018. They continued to sell this product for four years. They had letters from members of Congress. They had a New York Times investigation. They had bans in foreign countries. They didn't restrict the sale of sodium nitrate to adults. They didn't restrict the sale of sodium nitrate on their website to commercial users. They continued to sell this product. So this isn't really, you're not saying that a warning would have solved it. You think they would have had to take some extra. Warning's part of it, Your Honor, and we say that's a fact issue. But the additional thing is they had to take steps with respect to this product being on their website. The warning seems Eureka's point because, I mean, these kids bought it because they knew it would be used to commit suicide. So what good would a warning on the package say that this could be used to commit suicide? They didn't know, Your Honor, that it was irretrievably deadly. That's your sort of psychological thing about how children don't really understand this. That's right, and that's the importance of the pediatric amnesty. If you wrote on the warning that this could kill you, well, they know that. You're saying they're not absorbing it in a mature sense. They don't understand that means they're not coming back, but that's not going to be sitting on the warning. Some of the warnings merely said it's an irritant. The product is an irritant. And to make it worse, Amazon not only has the product, but then it has related products, the things that are going to facilitate it and make it worse, the anti-vomiting and so on. Absolutely, Judge Fletcher. I want to come back to the question as to what do we do with the court of appeals decision. I'm speaking now for myself. We've not conferenced on this case, but it seems to me it makes sense for us at least to wait to see whether the Washington Supreme Court is going to take it. If the Washington Supreme Court doesn't take us, what should we do? Well, if the Washington Supreme Court doesn't take it, I think this court can do one of several things. It can certainly predict what the Washington Supreme Court, the highest court of Washington, would do on the suicide effect issue. If they don't take it? I understand that it's a discretionary review, but this is a high-profile situation, one, as you say, that has a history, and if they don't take it, don't we get a message from that? Well, we do in part, but as the court knows, the fact that the Supreme Court of Washington does or does not grant review is not precedential. It's not consequential. I understand that, but in terms of our prediction about what the Washington Supreme Court would do. It's prudential.  I get that, and I agree with that as a proposition, but this court could do one of three things. It could simply decide the issue based on what it would predict the Washington Supreme Court would do. It could do that now. It could stay the proceedings pending the disposition by the Washington Supreme Court of the Scott petition that I assure you is 100 percent going to be filed. I'm drafting it. Okay, I was waiting. Filed again. I thought you were going to go a little further. No, it's getting there, believe me, Your Honor. And then the third thing the court could do, we ask the court to certify the issues to the Supreme Court. It's quite presumptuous at this point because they have the opportunity to decide. This is a question. Is it exactly the same case? Is there anything different about these cases? There are some slight factual variations. In the state court cases, there was evidence that the kids tried to reverse the effects of suicide. They called their parents in the course of the effect of the poison. They called 911 in the course of the effect of the poison. So the notion that they had irretrievably set upon the decision to kill themselves. But it sounds like the legal issues are basically the same. The legal issues are the same, but I think the factual issues, there are factual differences. And in this case, you have an additional factual point. You have a 16-year-old girl who got an Amazon account, which Amazon says you're not supposed to have as a minor. She gets the drug or the chemical. You have the circumstance of the mother who canceled the order that she saw that appeared. And she canceled it, and Amazon delivered the poison anyway. Amazon says it's canceled, but it wasn't. That's exactly right. Exactly right, Your Honor. And that's what you've got. As I mentioned, you have Amazon knowingly being involved in this. Some of their competitors, Etsy, eBay, they stopped selling this thing. And Loudwolf, one of the actual manufacturers of sodium nitrate, they said take this off of your website, Amazon. When? They did once they started to realize that it was being used for suicide by kids. But after these children. But after these kids, that's right. They learned and did that at that point. At this point, is there sodium nitrate on the Amazon website? No, but Amazon has not promised never to put it back on its website again. They've taken it off for prudential reasons, but you can ask counsel for Amazon. Will they make an irrevocable promise to you not to put it back on their website once all this litigation is over? They haven't made such a promise to anybody. Well, but that doesn't really resolve your case, right? But it wouldn't resolve our case. Could a 16-year-old walk into a hardware store and get this? No. Why? Because, I mean, I think you have to get it. I think you have to get it through, you know, through these websites, these specialized websites. Why? I don't believe it's. I don't believe it's. The hardware store doesn't carry it? The real world isn't operating anymore at all? I don't know that it's being carried by any hardware stores or any kind of physical bricks and mortar sales. I mean, you have a good point that they, you know, are much less likely to, but I strongly suspect they could. I don't know that that's been teased out on the record, Your Honor. But, I mean, I'm not aware of any circumstances where it can be accessed by, you know, somebody walking into their local True Value or, you know, some other hardware store or something like that. The bottom line in this case is that you've got some fundamentally wrong perceptions about the Washington Product Liability Act by the trial court. There is no product defect predicate to a lawsuit. Well, but we're going to get some conclusion to that either through a court of appeals decision that stands or through a Supreme Court review. That's correct. But I can tell you this much, Your Honor, and this is something that's been glossed over in the record on the issue of defect. The Washington Supreme Court in Tabert, 86 Washington 2nd at 154, specifically held pre-Washington product liability law, there is no requirement of proving a product defect as a predicate to a 402A common law cause of action for product liability. What the Washington legislature was doing in 040 at Tabert is a seller liability case pre-WPLA. What the Washington legislature was doing, and I have a little bit of cognizance of what the legislature of Washington had in mind with regard to this issue, having been the chair of the Senate Select Committee on Product Liability and Tort Reform that wrote this law, the fact of the matter was the legislature was trying to limit seller liability. Sellers were strictly liable. And what the legislature wanted to do was to diminish seller liability to circumstances of negligence only, and that's reflected in the language of the statute. But is the negligence that you're forwarding only about the warnings or also about just selling the stock? It's about everything. It's about any kind of common law negligence. Amazon's made the argument that somehow negligence stands aside from everything else. All right. So on the non-warning issues, the questions are essentially duty and proximate cause. Yeah. I mean, it's the traditional negligence theories. But the bottom line was the legislature used the term negligence with a complete understanding of what the common law in Washington meant with respect to negligence. It's charged with that responsibility under Washington law. It's presumed that the legislature knew what common law negligence meant, and it used the term negligence, which is a common law-laden term, in doing what it did. So let me ask one final question before we reserve rebuttal time. I mean, we're stuck in a situation – not stuck, but the situation is we've got a court of appeals decision that's either going to stand or we're going to get a Supreme Court decision. I mean, regardless of which way that goes, I assume the proper course would be to ask for supplemental briefing. I mean, the arguments you're making, all we have right now are 28J letters. I'm assuming that you would want the opportunity to make the case in some supplemental briefing as to why, in your view, Scott – if Scott stands as a court of appeals decision, why that – Yeah, that would be very helpful, Your Honor. I think it would be very useful. I mean, this is a case where you're put in the position of having to predict what the highest court in Washington is going to do. Well, but we do that all the time. You do that all the time. But in this case, you've got a court of appeals decision that the Supreme Court of Washington wanted to focus the law and to address the law, and what did that court do? It punts on one of the fundamental issues in the case. Well, but, I mean, if I were the Washington Supreme Court, I would say, well, this is helpful, because on the product defect question, they did resolve it, and at least for myself, they seem pretty persuasive.  And so it does narrow the issues for purposes of the Washington Supreme Court. Essentially, whether these cases saying that suicide is a superseding cause either don't apply here or shouldn't go forward. I mean, that's basically where we are, as I understand. I think that's right. But you have one additional feature, and before I sit down, I want to point this out to the court. The Adgar case of Division II of the Court of Appeals, we provided it as a supplemental authority. Adgar is a recent case of the court. This is a case where a local public utility district leaves the staff, leaves the truck running with the keys in the ignition. It seemed what they were really saying was, look, the danger was that he was going to get in the car drunk, and he was going to hurt somebody. Whether he hurt somebody because he was trying to commit suicide or because he was just drunk and ran into somebody really isn't the question in terms of, that's how I read it. But his testimony, Your Honor, was I was intending to commit suicide with this truck running into him. Oh, I understand that, but the ruling seemed to be the danger here was that a drunk person was going to get in the car and hurt somebody, however they were going to hurt somebody. But to our point, they addressed specifically Arsenal, Orcut, all of those suicide superseding cause cases, and in doing so, specifically said, well, wait a minute. Modern superseding cause law in Washington says that you have to have a situation that's completely different and disparate from the initial negligence. It has to be something that's extraordinary and unexpected, which is not what you have in this case and why we believe that the superseding cause notion of Webstat as a matter of law is just flatly wrong given existing Washington law now in superseding cause. Would you be that, I mean, at what point does Amazon or somebody like that get on notice of this or to the point that they're negligent? I mean, in other words, you have this huge retailer online or otherwise, and then a pattern develops of people buying this product and committing suicide. But presumably, they're charged with that duty at some point once it becomes a pattern. Here, Your Honor, you have a lot of things. You have in 2018 some of the families reaching out. But you would agree that it has to be not on day one. Not on day one. They have to have notice. But they have notice in this case. They have notice from the families back in 2018. They have the fact that suicides are being committed. I mean, I think that's what we're getting to is what would notice be. It can't just be, hey, my son used this and committed suicide, and then they just take the product out. I mean, there has to be something more. There is here, though, Your Honor. I know. I think we're looking. No, you're looking at the policy. Where do you draw the line? You have to have notice. One incident, probably not. But here you have multiple instances. You have the multiple instances of kids committing suicide. You have a letter from members of Congress. You have a New York Times investigation. You have competitors taking the product off the market. So your point is wherever that line might be, we're well past it. We're way past it. So we don't need to draw it. It's wherever it is, we're past it. It's way in the rearview mirror in this case. And, you know, foreign countries banning it, restricting its access, and all of the rest. Okay. Thank you. Thank you, Your Honor. I'll give you a minute or two for rebuttal. We'll hear from Amazon. Thank you, Judge Nelson, Greg Miller, Perkins Coie, LLP, on behalf of Defendant Amazon. The Scott decision does not undermine Judge Robart's decision in McCarthy. It takes issue with one component. It's completely inconsistent with his main point. No. But what they say is we disagree with the defect point. But two other components, the warning and the proximate cause rulings of his opinion, apply here. And we believe that they're correct. And we believe that they support our conclusion that there is no viable theory of liability under Washington law on any hypothetical facts that could impose liability on Amazon in this situation. Could we wait for the Washington Supreme Court to see what it wants to do with this case? I think that's within your discretion to do so, certainly. That's not quite an answer, but I guess I'll take it. No. But what I would say is I think you're safe going ahead and going to write, start writing the opinion, but. Safe because you're confident the Washington Supreme Court's not. I would say it's more likely than not that they're going to deny review here based on statistically how the review process shakes out. What about what we just heard, that there's this commission? Two inside baseball. Well, I don't want to take you into all the – well, I'm happy to take you into all the weeds of Washington procedure. His opinion, the commissioner's, was in regards to whether or not Division I should have granted review for extraordinary error. Basically, like should you have granted a mandamus petition to review this 12b-6? And he said, I think you got that wrong. And that's how I think you have to read Commissioner Johnston's order that he writes. It's in the context of this sort of extraordinary review and whether that was warranted, particularly within the context of the 12b-6 standard that Washington has, which is very different than the federal courts. But you – I think you would have to agree that this case is – whatever the statistics are, say it's 5 percent, 10 percent review grant. This case is outside of that. There are factors, whether this is one of them. But even the opinion itself sort of lends itself to saying, hey, we need to take a close look at this. It doesn't mean they're going to grant, obviously. So it has some signals on the proximate cause. But there are two separate bases for their ruling. The first is their determination that there is no duty to account for intentional misuse of a product. are completely overlapping as I understand it because the suicide decisions seem to be as to both. And if you would subtract out or discredit some per se rule that there is no duty with regard to suicide, there is no proximate cause. If there is a suicide, they seem to be awfully close to each other. So I don't see the difference really. You would still need to have a theory of duty. And they went and they analyzed what is the closest analog here, which is negligent entrustment. And they said there are two key components missing here that are necessary. Why is it negligent entrustment? Why can't it simply be the foreseeability of the danger? And the fact that you're – I mean, you're selling something that's dangerous. Because there are decades of Washington Supreme Court and Court of Appeals precedent saying mere foreseeability that people will be injured is not a basis for imposing liability, either in strict liability or in negligence. I think kind of some historical – Well, I'm – perhaps I don't have the lingo right. But selling something that you know doesn't have any legitimate use for the purpose that – in the circumstances that you're selling it and that is dangerous to the point of death is not itself negligent or couldn't itself be negligent? Certainly not. Or couldn't itself – you couldn't have a duty not to do that if you want to use the duty language. I've always found from torts one on that the whole duty concept is extremely mushy. Well, if it involves an intentional misuse of the product, there's certainly no duty.  That is not in bond. But to get to your – The whole problem here was that it wasn't an intentional misuse, that there was no use. Oh, well – I mean there were uses, but there were not uses that in the non-commercial, non-industrial situation. No. Well, there certainly are. I mean to answer – to go back to your question of can you buy this stuff off the shelf, appellate counsel is not being – acting with candor in this court. There is another lawsuit brought by the lead counsel at the trial level that brought this lawsuit, Jenks, where the brand of sodium nitrate at issue is called Pro-Cure. It's used to cure salmon and steelhead fish eggs, uses fish bait. And what concentrations is it sold? It's a high-purity sodium nitrate as well. It's, I believe, 96 percent. I saw it on the shelves of the Outdoor Emporium on 4th Avenue in Seattle when I was walking around with my son on Father's Day last year. And an associate from my firm went down to their other store in Kent, I believe, and purchased it off the shelf. So there are hobbyist users – I understand we're well outside the record, but what did it say? It said diluted – Not for human consumption. Not yet. Right. But let me ask you this. It's pretty clear from the things that I saw in the record that Amazon not only had the product, but in the little bar below it had all the things that would make the product. Here's how you commit suicide. This product plus these things. That's what Amazon was doing, correct? That is a – That's a yes or no question. Is that what Amazon was doing, correct? No, they were not recommending suicide kits. I didn't say that. Yeah. So what they said, they had a picture of the product, and then below that they had other products that would actually facilitate this as a suicide agent, correct? Yes. With a qualification, if you look at the screenshot that they have, I think it says like five out of seven. It's clear that someone had to click through five times to find that particular recommendation from the algorithm. But more importantly, for purposes of this case, Christine Johnson drove to CVS after sneaking out at night and bought the tagamate, the acid reducer, separately from a different – But it was the tagamate that also showed up right on the website, right below this product. Yes, and also recommended by the sanctioned suicide website. How does that get recommended? I mean, it's an algorithm, right? It's not like Amazon is doing – I mean, Amazon is not facilitating that, but they're not apparently taking steps to correct the algorithm and say, hey, this might not be the best product we should put out there. Going outside of the record, I can tell you that Amazon is taking steps to remove the peaceful pill handbook as something that is recommended in conjunction with sodium nitrate. It's not even sold now. What the algorithm was showing, as I understand it, in the Amazon context, is something like people who buy this often frequently buy that. And I guess that's done just statistically. So there are two different kind of – well, widget windows. One is customers who bought this also bought or frequently bought together, and then there is also customers who viewed this item also viewed. And the handbook itself, I am not aware – again, going outside of the record – of any instance where there has been a purchase the peaceful pill handbook associated with the use of sodium nitrite on Amazon for suicide. You asked – I think it might have been Judge Burrson about the differences between this case and the other case for purposes of certification. The Washington Supreme – Not for purposes of certification, but purposes of whether the Washington Supreme Court's resolution one way or another, that is, either hearing the case or not hearing the case, is totally dispositive here. It – so it would be if they deny review or grant review and reaffirm the proximate cause rules applicability here, then it's completely and totally dispositive of all the claims. But also if they just affirm the 1B1 no-duty holding of the court, or if it stays in place if they don't review it or if they affirm it, that gets you there as well, because there is no recognized duty at common law regarding the need to warn or otherwise restrict the sale of products to account – So there's no difference between the two cases? No, there's no legally relevant distinction, particularly given the doctrine of hypothetical facts and how Washington courts make their determination that a 12B6 motion should be granted. They say, like, even if there are facts that are not alleged, that a judge happens to think up on appeal, like from the bench, if we can think of something that might have made it a viable claim, we deny the 12B6 motion. An incredibly high bar that I can cater to as a member of the defense bar makes it very difficult to win on 12B6 motions. So at that point, a ruling either from the Court of Appeals or from the Supreme Court saying that there is no legal claim is going to be dispositive in this case as well. And, you know, under the West decision from the Supreme Court from 1938 that this court applied in Herrera, which you, Judge Berzon, and you, Judge Nelson, joined, when a Supreme Court declines review of an intermediate court decision, that increases the deference owed, and it is the functional equivalent of refusing certification from this court. It would be completely improper for this court to go ahead and certify right now when there's going to be a process in the normal course of litigation. We should know in four months. I would suspect so. The one thing I want to... You say it's improper. Why would it be improper? It might be unnecessary, but it seems to me that if we were to certify to the court, the Washington Supreme Court, it would be to say, you know what, this is really important. It's not only coming to you, it's coming to us too. This is a recurring question. So why is it improper for us to certify? Because you would be burdening them with the additional question. We would be burdening them with the additional knowledge. Here's another case that presents the exact same facts, and that is, therefore, all the more important that you take a look. So given that the Scott panel opinion spends ample time discussing the McCarthy opinion, this case is bound up in the consideration that the Washington Supreme Court would have. I wouldn't expressly say or even mention, I think, that the Washington case is on appeal. The McCarthy case is on appeal. No, they don't. It treats the Washington District Court opinion as dispositive for its own purposes and doesn't notice that we have an argument today. I'm not at all convinced that it would be improper for us to do it. We may or may not want to do it. That might be true. I think improper is too strong. Let me say, in the spirit of comity and federalism. Your better point might be that it doesn't necessarily, it doesn't fit within our traditional use of our discretion. Yes, I would point you to Judge... Which may or may not be true. To Judge Berzon's concurrence in the Herrera case that we don't need to burden our state courts with an additional redundant request for them to consider an issue when they've just decided. Well, but this is a slightly, to be fair, this is a slightly different issue because there they had already denied it. Well, we waited and they denied it, and then we said, well, then it doesn't make sense to certify it. I think as Judge Fletcher was pointing out, suggesting that, hey, we also have an interest, that does, I mean, again, whether we should do it or not, it does seem like a different dynamic. Also in terms of a burden on them, they're already going to be deciding whether they want to decide the case, so they're not going to have to do any work they don't have to do anyway. It would be an extra motion that they would have to decide.  The other problem is if they incorporate this case in, then dealing with the 12B6 pleading standard and what facts are and aren't in this case and can be considered by them and juggling that in addition to the hypothetical fact standard. That would be up to them whether they want to deal with that. What do you mean by the hypothetical fact standard? That, to go back to what I said earlier, you know, we have Twombly and Iqbal and Rule 8A, and the Washington courts have said we do not subscribe to that. When we're ruling on a 12B6 motion, we can consider any facts that are consistent with the complaint, even if they're not alleged. Are you suggesting that even if the Washington Supreme Court decides to reverse the 12B6 equivalent there, that we could still affirm? There would be the preservation issues here in regards to their legal position about the defect question, but given the questions of this court, I'm going to guess you would exercise your discretion to not affirm. I don't understand that point, because the district court ruled on that, right? Yes. And our case law says clearly that if the district court rules on it, then it's reviewable and there's no preservation question. You have discretion to review it. No, no, it's stronger than that. When the district court rules on it, I mean, I have to find the case, but I know for sure. I mean, and it makes sense. I mean, if the district court rules on it, how can it not be reviewable? Like many things that aren't pressed below, the case law is that if the district court rules on it,  I'll acknowledge there are cases going both ways saying that.  I apologize for stepping in. I will acknowledge there are cases going both ways on that. No, not on that question, not on that exact question. If the district court rules on it, you rule on that. Depending on what happens with, you know, whether the Supreme Court takes it or not, would you agree, it sounds like you might also want some supplemental briefing other than just the 28-J letter to explain the implications of this? Certainly, and I think it would make sense, kind of where we're handcuffed, to really explain how much of an outlier this court would be if it recognized a duty here. Just look back through the briefs. They have not cited a single case from Washington adopting this kind of novel duty or any other state. There was no duty because of that, because it wasn't being used consistent with the uses? That's why? Basically, your position is the court of appeals got it wrong. No, no, Your Honor. They say on the beginning of their brief, they say there's no, quote, Washington law does not impose a duty on sellers to protect against intentional misuse of a product. And the Bond case is so on point on the general principle. They go through, there was a real move in the late 70s and early 80s to try and impose liability on manufacturers and distributors who were selling products that plaintiff attorneys were claiming were unreasonably dangerous by their nature. Slingshots, air rifles, mini-trail bikes in Bond. And the argument was, well, you're marketing this to children, you know they're going to use it in a dangerous manner, and so it's unsafe to sell them, period. And the vast majority of states, including Washington, rejected this theory because the core reasoning in Bond, as they say, it is the legislature's job to impose restrictions on the sale of a product or to say that categorically you can't sell to particular purchasers or you can't sell particular products. And that is an issue for the legislature, which coincidentally, there are legislative solutions that have been adopted in some states, including... But that's the question in front of the court right now. What is the legislation now? What's it mean? Yes, it is a question for the legislature, and the question is, okay, what does the law, as it now exists, as passed by the legislature, what does it mean? I'm not sure what law you're referring to, Judge Fletcher. The product liability law issue in this case. That is to say, you're saying, we look to the law of the legislature, I agree with you. What else is no? So I'm saying that if you're talking about departing from fundamental principles of product liability, the Washington Supreme Court in Bond and then the Court of Appeals in Knott, which was a Saturday night specials case, said these kinds of departures are for the legislature because it involves the balancing of competing interests, it involves complex issues. I question whether the legislature has departed from that here in the Washington law. I mean, I know your position, well, I assume your position is, Washington law doesn't depart from that, but I don't think that's what your opposing counsel's position is. I don't know where, what the argument would be. Yeah, and you read the Scott decision and they say, we're looking at our common law that could supply a duty here, and it doesn't apply. And then when you pivot back and you look at the preamble to the Washington Product Liability Act, which is an express codified statement of purpose, it says that their goal was to preserve the right of consumers to recover for injuries from, quote, unsafe products. Liability, this was part of an omnibus tort reform legislation that was meant to limit liability overall, to define the substantive liabilities of manufacturers and sellers and to bring the temperature down on an insurance crisis that was affecting manufacturers and sellers in the state of Washington. And so they wanted to cabin liability and define it. And to be recognizing novel duties 40-plus years after the statute was adopted would be fundamentally inconsistent with that statute. Even if you read negligence to just mean ordinary negligence, it has to mean negligence recognized at common law at the time the statute was passed. And that's how I read the Scott opinion's 1B1 ruling on duty, where they don't say anything about being an intermediate court. They just say there is no face-to-face interaction and these individuals do not fit within the category of recognized incompetence. And just think about it. If you could say that it's negligent to sell a product to individuals because there might be some risk that they're misusing it, there's no principled way to draw a line of, well, if you know if one person is misusing it. Is two enough? Is three? No, that's why the Court of Appeals had no problem with saying, well, you know that individuals are misusing Saturday night specials. Of course, they're not misusing it in one sense. They're using it exactly as they intend to use it and exactly as is evident from the website. This is a permissible use. I mean, that's what it's being sold for. Why do you say it's misuse? Well, I would disagree with your categorization that that is what it is being sold for. There were widgets and other kind of functions of the website that might have reflected some purchasing patterns, but there's no allegation that Amazon was intentionally selling this product for suicide. It's being promoted for that use, intentionally or otherwise. I mean, an algorithm doesn't come out of the sky. Amazon creates it, so it is intentional. It may not have thought through, a human being may not have gone and figured out how it was operating this particular instance, but it's not an accident. It is intentional. No, it's not, but to go back, the Scott panel recognized that that is a new feature but noted that Washington law does not impose liability even with these new features and it's not within the province of courts to be creating new duties with respect to that. But they mainly relied on the swebstack case, and this is why I say the two pieces collapse together, the duty piece and the approximate cause piece, because the main reliance in the duty is on a case that specifically seems to separate out suicide. It's the most on-point decision with regard to suicide, to be sure, but they mention that Judge Robart cites a score of cases dealing with obviously dangerous misuses of products, mini-trail bikes, back flips on trampolines, a baby in a mobile walker pulling hot water down on itself, that all the time there are foreseeable misuses that might occur, but when there are obvious dangers, then there is no duty to warn against them or to restrict the products. And that gets back to also your question, Judge Berzon, in the colloquy with plaintiff's appellate counsel about proximate cause, is it still needs to be in the zone of danger that you have a duty with regard to, and manufacturers and sellers do not have a duty to account for obviously dangerous misuse of their products. And at that point, whether the obvious misuse comes from suicide or from something else, it's outside the scope of danger. So that kind of answers even if you take their question at face value about proximate cause, it's outside the scope. But more importantly, the ADGAR decision helps us because it tells you that Orcut, Arsenal, and Webstat are still good law, but they apply to wrongful death suits where suicide is involved. They don't apply to third-party intervening conduct. It helps us and confirms that they're still the law of the land. And finally, I would point you to, in our response brief, I believe page 27, we cite to the Simonetta decision by the Washington Supreme Court, and they say that we attempt to and courts should align the WPLA with the preexisting limitations of liability recognized in common law. And both the limitations on negligent entrustment and on suicide were well recognized and established. They are incorporated into those elements of the statute, and a court cannot post hoc effectively amend the statute by changing those rules 40 years after the statute was passed. If the court has any other questions, I'm happy to answer them. Thank you for your time. Thank you. We'll give you two minutes for rebuttal. Thank you, Your Honor. I'm fascinated by counsel's perception of Washington Product Liability Act. It's Mr. Miller on the WPLA, contrary to the express language of the statute, the legislative history of the statute, and the case law in Washington. Let me point out, first of all, with respect to his insistence on misuse, the Washington legislature addressed that in the statute. It defined fault to include misuse, and it then said comparative fault is available as an argument for parties, but comparative fault does not bar recovery. So the argument that misuse will somehow bar recovery is forestalled by the specific language of the statute. Now, counsel has also said, misrepresenting what the Scott court held, that there's no duty in this case. The Scott court held that there was a Restatement 281 duty. That's at star 13 of the court's opinion. It specifically holds duty exists. Then the question was whether proximate cause was present in the case, and that's why we come back to the suicide effect issue. There's a section that starts on page 17 of the opinion, duty as seller. It does conclude that there wasn't a duty. It said that there was no duty to prevent suicide, but it comes back to the proposition that there's a duty at star 13. Quote, Amazon has a duty to purchasers under Restatement Second of Torts Section 281, which had been adopted and relied on by our Supreme Court in multiple cases. So when counsel stands up and says, oh, this is an unforeseen kind of novel extension of the law, that's just baloney. The Scott court itself said 281 was a basis for duty in the case. And not to be lost sight of, there's a distinction between the Webstead case where the guy stood aside and didn't do anything while the young woman committed suicide and the circumstances here where there's a facilitation of the suicide looking specifically to the statute that we've quoted to the court, RCW 9A 36060. Now, there are a couple of other points I wanted to make with respect to— Counsel, you better make them very succinctly. I'll make them very quickly, Your Honor. This is one of—there are 10 cases involving 23 other families. This is a case in which the Supreme Court is likely to grant review. Commissioner Johnston indicated that as much in his ruling. And I would note as well that there's an agreement between Amazon and those plaintiffs to stay proceedings in those cases pending the disposition of the Scott case by the Supreme Court of Washington. So the— Why not whether there's any point to us certifying the case now? Well, I think the court could certify it and it would basically encourage the Washington Supreme Court to address the issue. I assume you're going to tell the Washington Supreme Court in your petition that this case is pending and that it was argued and that we're— We will. And if we end up holding it for Scott's status being held. It would be useful for the court to understand that this is an issue that has consequence. And apart from what Commissioner— But you're going to tell them that. We're going to tell them that for sure. But I think it would be helpful if this court weighed in as well. Thank you. Yes. All right. Thank you. Thank you to both counsel for your arguments in the case. The case is now submitted. The court's going to take a brief recess before our final argument today.
judges: FLETCHER, BERZON, NELSON